# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS GUSTAVO CABRERA MIRANDA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-7538-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY MOTION FOR IMMEDIATE REVIEW, AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF Nos. 1, 4)<br><br>ORDER DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL<br><br>(ECF No. 3) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a native of Cuba who was ordered removed from the United States to Cuba on June 20, 2006. (ECF No. 12 at 14–24.[1]) Petitioner filed an appeal with the Board of

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

Immigration Appeals, which dismissed the appeal on November 8, 2007. (Id. at 27.) On June 10, 2026, Petitioner was encountered by U.S. Immigration and Customs Enforcement ("ICE") at Naples Jail Center due to an arrest for possession of drug equipment. On June 12, 2026, Petitioner was transferred to ICE custody upon release from state custody.[2] (ECF No. 12 at 30, 31.)

On August 18, 2026, Cuba denied Petitioner's repatriation. Enforcement and Removal Operations ("ERO") is currently exploring third country removal options for Petitioner. (ECF No. 12 at 11.) On July 20, 2026, Petitioner signed a third country removal notice to Mexico. (Id. at 53.) ICE attempted to remove Petitioner to Mexico, but on July 31, 2026, Petitioner was refused by Mexican authorities for medical reasons. Thereafter, on August 10, 2026, September 1, 2026, and October 5, 2026, ERO attempted to serve and obtain Petitioner's signature on paperwork concerning third county removal to Mexico. Petitioner has refused to sign the documents to initiate the process of third country removal to Mexico. (Id. at 11.)

On September 17, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On October 13, 2026, Respondents filed a response. (ECF No. 12.) Per the Court's order, Respondents filed a supplemental brief on October 29, 2026. (ECF Nos. 13, 14.)

## II.

## DISCUSSION

Although the deadline for Petitioner to file a traverse has not yet passed, the undersigned finds that issuance of the findings and recommendation is appropriate.

### A. Statutory Authority for Petitioner's Detention

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the

---

[2] Petitioner has never been released on an order of supervision. Petitioner was in non-detained proceedings when he was ordered removed on June 20, 2006. He did not have any reporting requirements at that time, so Enforcement and Removal Operations' first contact with Petitioner was when he was apprehended on June 12, 2026.

necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.' § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)."[3] Id. at 578 (some internal quotation marks omitted).

> Under § 1231, the removal period may be extended in at least three circumstances, such that an alien remains detained after 90 days have passed. First, the removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal. § 1231(a)(1)(C). Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution. § 1231(c)(2)(A). And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order. § 1231(a)(6); see also 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention). Continued detention under this provision creates the "post-removal-period."

Johnson v. Guzman Chavez, 594 U.S. 523, 528–29 (2021).

Here, Respondents argue that the "removal period was extended by his refusal to cooperate—making detention mandatory during the extended period under § 1231(a)(2) and permissible afterwards when DHS determines non-compliance with the removal order is likely." (ECF No. 12 at 4 (citing 8 U.S.C. § 1231(a)(1)(C), (a)(2), (a)(6)).) Judges in this district have rejected this argument as "frivolous" and a "wast[e of] the court's time and resources" and observed that "[t]o adopt the Government's position on the use of detention to strong-arm third-country removal to Mexico would not only undermine the consent requirement of removals

[3] "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)).

under the present standing agreement but also sanction the use of detention to coerce otherwise unavailable removals." Obando Vargas v. Blanche, No. 1:26-cv-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026); Ramirez Outerino v. Warden, No. 1:26-cv-05326-DJC-JDP, 2026 WL 2327873, at *2 (E.D. Cal. Aug. 11, 2026).

Accordingly, the undersigned recommends finding that 8 U.S.C. § 1231(a)(1)(C) is not applicable, Petitioner is not subject to mandatory detention during an extended period under § 1231(a)(2), and Petitioner is subject to discretionary detention under § 1231(a)(6).

**B. Zadvydas**

In Ground One of the petition, Petitioner asserts that his continued detention violates due process and Zadvydas v. Davis, 533 U.S. 678 (2001), because there is no significant likelihood that he will be removed in the reasonably foreseeable future. (ECF No. 1 at 13–14.)

In Zadvydas, the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

"In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted). Here, Petitioner's detention has not exceeded the presumptively reasonable six-month period. However, the "six-month presumption of reasonability under *Zadvydas* is 'just that—a presumption.'" Burunsuzyan v. Noem, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026) (quoting Clark v. Martinez, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring)). "Such a presumption is not a 'prohibition on claims challenging detention less than six months.'" Burunsuzyan, 2026 WL 246067, at *5 (quoting Hoang Trinh v. Homan, 333 F. Supp. 3d 984, 993 (C.D. Cal., 2018)). "The central holding of *Zadvydas* is that section 1231(a)(6) does not permit detention beyond the initial 90-day removal period when removal is not reasonably foreseeable. At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period." Hoang Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (citation omitted). Accord Ndandu v. Noem, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *3 (S.D. Cal. Jan. 5, 2026) ("Multiple district courts have found that the six-month presumption is rebuttable.") (collecting cases).

Zadvydas "held that detention for less than six months was *presumptively* reasonable but left the lower courts to determine whether detention has 'exceed[ed] a period reasonably necessary to secure removal' in individual cases." Hoang Trinh, 466 F. Supp. 3d at 1092 (quoting Zadvydas, 533 U.S. at 699). "Accordingly, we must assess whether Petitioner has established enough evidence that his removal is not reasonably foreseeable." Burunsuzyan, 2026 WL 246067, at *5.

"Courts routinely find that noncitizens" who "cannot be removed to" the country listed in their removal orders and do "not have citizenship or significant ties to any other count[r]y, and [where] there is no evidence that any other country is willing to accept [a] third country removal under 8 U.S.C. § 1231(b)(2)(E)," "have met their initial burden under *Zadvydas*." Elshourbagy v. Bondi, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (collecting cases). "Courts have noted

that that the standing agreement between the United States and Mexico appears premised on Petitioner's compliance and have therefore held removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-cv-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026) (collecting cases). Here, Cuba denied Petitioner's repatriation on August 18, 2026, and Petitioner has refused consent to removal to Mexico multiple times. (ECF No. 12 at 11.)

Although Respondents are exploring other third country removal options for Petitioner, (ECF No. 12 at 11), Respondents have provided no evidence that any country is willing to accept Petitioner for a third-country removal under 8 U.S.C. § 1231(b)(2)(E). "[T]hird country removal still requires the affirmative assent of the receiving country." Ndandu v. Noem, 819 F. Supp. 3d 1155, 1161 (S.D. Cal. 2026) (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). "Even if Petitioner was to be removed to a third country, that process 'would require additional, lengthy proceedings' because of Petitioner's right to seek fear-based relief." Riveros Cadavid v. Dep't of Homeland Sec., No. EDCV 26-01805-KK-DTBX, 2026 WL 1105032, at *3 (C.D. Cal. Apr. 17, 2026) (quoting Ndandu, 2026 WL 25848, at *5). "Among other things, Petitioner 'likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings,' which 'further demonstrates that removal is not likely in the reasonably foreseeable future.'" Riveros Cadavid, 2026 WL 1105032, at *3 (quoting Ndandu, 2026 WL 25848, at *5). Respondents provide no further details regarding what actions have been and will be taken regarding removal to any alternate third country. A "general assertion that ICE is 'mak[ing] efforts' . . . is not compelling." Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025).

Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute.[4] See Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations

[4] Given this conclusion, the Court declines to address Petitioner's other claims for relief.

regarding the likelihood that removal will occur."). Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period).

The Court recognizes that Petitioner has a lengthy criminal history. However, any concerns can be addressed through the conditions of supervision imposed on Petitioner upon his release. See Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) ("Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai.").

### C. Motion for Appointment of Counsel

Petitioner has moved for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if "the interests of justice so require." To determine whether to appoint counsel, the "court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

In light of the Court's recommendation that Petitioner is entitled to habeas relief, the undersigned will deny Petitioner's motion for appointment of counsel.

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on Ground One;
2. Petitioner's motion for immediate review (ECF No. 4) be DENIED;
3. Respondents be directed to immediately release Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5; and

4. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Further, Petitioner's motion for appointment of counsel (ECF No. 3) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 4, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE